IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DEBBIE J. BRUSUELAS,**

    Plaintiff,

vs.                              Civ. No. 97-818 M/DJS

**KENNETH S. APFEL,**
**Commissioner of Social Security,**[1]

    Defendant.

**<u>MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION</u>**[2]

    1.   Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing. The Court will review the Commissioner's

---

[1] Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted therefore, for Acting Commissioner John J. Callahan as the Defendant in this suit.

[2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.   Plaintiff applied for Supplemental Security Income (SSI) benefits on September 13, 1994.  Tr. 17, 25-27, 35 and 42. The Administrative Law Judge (ALJ) found that Plaintiff was not disabled. Tr. 17.  The Appeals Council denied Plaintiff's request for review.  Tr. 4.  The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.   Plaintiff alleges a disability since due to scoliosis, right shoulder separation, and a head injury.  Tr. 17, 25-27, 35 and 42.   Plaintiff was born on January 29, 1962.   Tr. 25. Plaintiff has a tenth grade education.  Tr. 64.  Her past relevant experience was as a fast food restaurant worker.  Tr. 17.

**Issues**

4.   Plaintiff alleges the ALJ made three errors. Specifically Plaintiff claims that: (1) the ALJ improperly ignored Dr. Hamilton's recommendations regarding Plaintiff's head injury; (2) the ALJ erred in finding Plaintiff's headaches not a severe impairment; and (3) the case must be remanded for consideration of Plaintiff's I.Q. test results.

**The Standard of Review**

5.    The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.    The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work.  Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612

F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.   To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

8.   Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  These grids reflect the existence of jobs in the national economy at various residual functional levels by

incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9.  Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v.

5

Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.    The Commissioner referred the Plaintiff for a consultative evaluation by Jan Hamilton, M.D.  Based on the history given by the Plaintiff, Dr. Hamilton wrote that Plaintiff had sustained a head injury when she was 8 years old and was in a coma and has had headaches since that time. Tr. 78-79.  Dr. Hamilton noted neurological deficits.  In her report Dr. Hamilton recommended that Plaintiff under go psychometric testing and a neurological evaluation to evaluate the Plaintiff for disability.  The ALJ did not request these consultative evaluations.  Further in his decision the ALJ wrote that the "consultative evaluation performed by Dr. Hamilton concluded that the claimant's overall condition did not prevent her from performing work activity..." Tr. 16.

11.   The Plaintiff has the burden to make sure there is evidence in the record sufficient to establish a reasonable probability that a severe impairment exists.  However, once the Plaintiff has met that burden it is the duty of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.  Crawford v. Chater, 1998 WL 120222 (D. Colo. 1998).  "This is consistent with the ALJ's basic duty of inquiry to fully and fairly develop the record as to

material issues.  Id. at *7 citing 42 U.S.C. §423(d)(5)(B); 20 C.F.R. 404.944; Jordan v. Heckler, 835 F.2d 1314, 1315 (10th Cir. 1987); Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987).  The specific reason the ALJ ordered a consultative evaluation in this case is not part of the record.  However, the ALJ's should order consultative evaluations "when evidence in the record established the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." Hawkins v. Chater, 113 F.3d 1162, 1164, 1169 (10th Cir. 1997). Based upon the evidence in the record it is clear that another consultative exam would have produced material evidence either supporting Plaintiff's claim or not.  20 C.F.R. §404.1519b. Plaintiff has clearly put at issue her headaches, her head injury and her intellectual functioning.  Tr. 60, 84, 97, 98, 99, 109, 115 and 143.  The evidence is inconclusive as to their disabling effects, if any.  The ALJ's analysis would have benefitted from additional consultative examinations.

    12.  Defendant asserts that Plaintiff is arguing that to follow Dr. Hamilton's recommendation is to confer treating physician status upon Dr. Hamilton.  Defendant is correct in that Dr. Hamilton is not a treating physician and thus controlling weight should not be given to her opinion.  However, some weight should be given. Otherwise, consultative examinations would be superfluous.  This is particularly true in this case in that Dr.

Hamilton's recommendations are consistent with the other medical findings in evidence.  Based on the record Plaintiff has seen physicians regarding her headaches, Plaintiff suffered a head injury and has neurological deficits.

13.   Plaintiff also argues that her case should be remanded to consider additional evidence, specifically a psychological evaluation which includes an I.Q. test.  According to this evidence Plaintiff's full scale I.Q. is 63 which puts Plaintiff in the mildly regarded range.  Additional evidence may be considered by the Court if the evidence is new and material and there is good cause for failure to incorporate such evidence into the record in a prior proceeding.  See Cagle v. Califano, 638 F.2d 219, 221 (10th Cir. 1981). The Court finds that this evidence is new and material. The report is dated almost four months after the ALJ's decision. Further it is reasonable to conclude that this evidence would have changed the Commissioner's determination.  Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993).  Plaintiff's intellectual functioning was at issue.  In the "Disability Supplemental Interview Outline" Plaintiff stated she read only children's books and has trouble understanding some words.  Tr. 57.  In the form that Plaintiff was instructed to complete prior to the consultative evaluation by Dr. Hamilton, Plaintiff states that she was a "real slow learner."  Tr. 84.  The Plaintiff testified she could not read or write.  Tr. 125-26, 133.  There is no evidence of Plaintiff's I.Q. in the record.

14.   However, the weight of the authorities do not support

that good cause has been shown as to why this report was not produced in the prior proceeding. Plaintiff's assertion that she was not represented by an attorney at the time her case was before the ALJ or the Appeals Council is not good cause. See <u>Carter v. Schweiker</u>, 649 F.2d 937, 943 (2nd. Cir. 1981); <u>Allen v. Secretary of Health and Human Services</u>, 726 F.2d 1470 (9th Cir. 1984). However, the Court assumes this issue will be considered on remand because psychometric testing will measure, *inter alia*, mental abilities.

### Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be granted and that further proceeding be held consistent with this opinion. Specifically the Court recommends that the Defendant order psychometric testing and a neurological evaluation of the Plaintiff.

_____
Don J. Svet
**UNITED STATES MAGISTRATE JUDGE**